**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Alpha Phoenix Industries LLC,
Plaintiff,
v.
SCInternational Incorporated et al.,
Defendants.

No. CV-12-1848-PHX-SMM

**MEMORANDUM OF DECISION AND ORDER**

Before the Court is Plaintiff's Motion for Default Judgment, (Doc. 45), default having been entered on November 26, 2012, (Doc. 25.) Also pending before the Court is Plaintiff's Motion to Strike Portions of Defendants' Response to Plaintiff's Motion for Default Judgment. (Doc. 49.)

**BACKGROUND**

The peculiar factual and procedural circumstances of this action have been recounted by the Court elsewhere, and are thus not recited here. (See Docs. 43, 56.) The Court scheduled a hearing on Plaintiff's motion for default judgment for June 18, 2013, at which Defendants Joanna Burke, John Burke, and Mark Burke (the "Burkes") were ordered to appear.[1] (Doc. 56.) The Burkes informed the Court they refused to appear, (Doc. 57), and were indeed absent from the hearing (Doc. 58.) Plaintiff appeared and called as a witness Nicholas Fasci, the sole owner of Plaintiff Alpha Phoenix Industries ("API"), who testified

[1] Defendant Charlene Clapp was also ordered to appear, and did appear, but was subsequently dismissed as a party pursuant to stipulation. (Doc. 61.)

about API's sales before and after Defendants' conduct that is at issue in this case.

**STANDARDS OF REVIEW**

**I. Default Judgment**

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules . . . the clerk shall enter the party's default." After a default has been entered and the defendant fails to appear or move to set aside the default, the court may, on the plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

Granting default judgment is within the court's discretion. See DirecTV, Inc. v. Hoa Huynh, 503 F.3d 847, 852 (9th Cir. 2007) (reviewing entry of default judgment for abuse of discretion). Generally, the test for whether to grant default judgment considers: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and, (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

If the court grants default judgment, then the "factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Garamendi v. Henin, 683 F.3d 1069, 1080 (9th Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)). However, a defaulting party admits neither conclusions of law, DirecTV, Inc., 503 F.3d at 854, nor allegations regarding damages, Geddes, 559 F.2d at 560.

**II. Injunctive Relief**

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). The four-element test for a permanent injunction requires the plaintiff to demonstrate: (1) that they have suffered an irreparable injury; (2) that remedies at law are inadequate to compensate for that injury; (3) a remedy in equity is warranted in light of the balance of hardships between the parties; and (4) that granting a permanent injunction is not contrary

to the public interest. Id.; Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations, No. 11-17763, 2013 WL 5227069, at *14 (9th Cir. Sept 18, 2013).

**III. Compensatory Damages**

In this diversity case, the Court's damages analysis is controlled by Arizona law. See Clausen v. M/V New Carissa, 339 F.3d 1049, 1065 (9th Cir. 2003). The measure of compensatory damages is a fact-bound inquiry and depends on the nature of the harm suffered. New Pueblo Constructors v. State, 144 Ariz. 95, 105, 696 P.2d 185, 195 (1985). "'[W]hen a claimant presents a number of legal theories, but will be permitted to recover only on one of them, his bases for recovery are mutually exclusive.'" Musa v. Adrian, 130 Ariz. 311, 313, 636 P.2d 89, 91 (1981) (quoting Wright & Miller, Federal Practice and Procedure: Civil § 2657 (1973)); see also, Robinson v. Kay, 225 Ariz. 191, 193, 236 P.3d 418, 420 (App. 2010) (noting easements by prescription and implication are different legal theories, but "do not in themselves constitute separate 'claims'").

**A. Defamation**

In an action for defamation, the allocation of evidentiary burden and the standard to which it must be proven depend on whether a plaintiff is a public or private figure, as well as whether the communication at issue is a matter of public concern. See Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Life Activists, 290 F.3d 1058, 1104 n.3 (9th Cir. 2002); Newcombe v. Adolf Coors Co., 157 F.3d 686, 695 n.4 (9th Cir. 1998). Typically, public figures "reach that status because of their position, their 'purposeful activity' in 'thrusting' themselves into matters of public controversy[,] or their close involvement with the resolution of matters of public concern." Dombey v. Phoenix Newspapers, Inc., 150 Ariz. 476, 483, 724 P.2d 562, 569 (1986) (quoting Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bureau of Maricopa Cnty, Inc., 130 Ariz. 523, 527, 637 P.2d 733, 737 (1981)). Selling products, even to the government, does not necessarily make the seller a public person. See Dombey, 150 Ariz. at 484, 724 P.2d at 570 ("A person who sells legal pads to the judicial department may legitimately expect to retain almost complete anonymity.").

"'Whether speech addresses a matter of public concern must be determined by the expression's content, form, and context as revealed by the whole record.'" Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 761 (1985) (alteration omitted) (quoting Connick v. Myers, 461 U.S. 138, 147-48 (1983)). Ordinarily, "speech solely in the individual interest of the speaker and its specific business audience" does not constitute a matter of public concern. Dun, 472 U.S. at 762.

"One who publishes defamatory matter concerning a [for-profit] corporation is subject to liability to it . . . if . . . the matter tends to prejudice it in the conduct of its business or to deter others from dealing with it." Dombey, 150 Ariz. at 491, 724 P.2d at 577 (quoting Restatement (Second) Torts § 561(a) (1977)). "One who publishes a false and defamatory communication concerning a private person is subject to liability, if, but only if, he (a) knows that the statement is false and it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them." Dube v. Likins, 216 Ariz. 406, 417, 167 P.3d 93, 104 (App. 2007) (quoting Restatement (Second) Torts § 580B).

**B. False Light Invasion of Privacy**

"Although both defamation and false light invasion of privacy involve publication, the nature of the interests protected by each action differs substantially." Godbehere v. Phoenix Newspapers, Inc., 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989) (citing W. Page Keeton et al., Prosser & Keeton on Torts § 117, at 850-51 (5th ed. 1984) ("Prosser & Keeton")). "Unlike defamation, false light does not protect reputation or good name, but rather protects mental and emotional interests." Reynolds v. Reynolds, 231 Ariz. 313, 318, 294 P.3d 151, 156 (App. 2013) (citing Godbehere, 162 Ariz. at 341, 783 P.2d at 787). "A corporation is regarded as having no reputation in any personal sense, so that it cannot be defamed by words . . . which would affect the purely, personal repute of an individual." Prosser & Keeton § 111, at 779. The view that a corporation cannot be psychologically injured is consistent with the position taken by the Restatement: "A corporation for profit has a business reputation and may therefore be defamed in this respect." Restatement (Second) Torts § 561 cmt. b.

**C. Tortious Interference**

The tort of intentional interference of business relationships ("IIBR") protects "reasonable expectancies of trade with third persons," and compensates, inter alia, "for loss of business caused by defamation." Restatement (Second) Torts § 766 cmt. b. A prima facie case requires proof of four elements: (1) existence of a valid contractual relationship or business expectancy; (2) interferer's knowledge of that relationship or expectancy; (3) intentional interference inducing termination of that relationship or expectancy; and (4) resultant damages. Antwerp Diamond Exch., 130 Ariz. at 528, 637 P.2d at 739-40. Moreover, liability will attach only if the interference was "improper." Wagenseller v. Scottsdale Memorial Hosp., 147 Ariz. 370, 387, 710 P.2d 1025, 1042 (1985) (distinguishing "improper" from "malice"), superseded on other grounds by statute, Ariz. Rev. Stat. § 23-1501 et seq. As IIBR requires specific intent, it requires proof that the allegedly improper interference was for the purpose of disrupting current and/or prospective business relationships. Antwerp Diamond Exch., 130 Ariz. at 528, 637 P.2d at 740.

**IV. Punitive Damages**

To decide whether a defendant has a valid claim for punitive damages, the court must look to the alleged wrongdoer's mental state. Linthicum v. Nationwide Life Ins. Co., 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986). Recovery of punitive damages requires more than the mere commission of a tort. Id. (citing Rawlings v. Apodaca, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986)). Punitive damages are reserved for "only those limited classes of consciously malicious or outrageous acts of misconduct where punishment and deterrence is both paramount and likely to be achieved." Linthicum, 150 Ariz. at 331, 723 P.2d at 680.

The "evil mind" of the wrongdoer is what distinguishes conduct worthy of the imposition of punitive damages, but "[i]n whatever way the requisite mental state is expressed, the conduct must also be aggravated and outrageous." Id.; see Rawlings, 151 Ariz. at 162, 726 P.2d at 578 (finding that punitive damages are appropriate in bad faith tort actions "when, and only when, the facts establish that defendant's conduct was aggravated, outrageous, malicious or fraudulent."). The plaintiff bears the burden of proving that a

defendant acted with the requisite "evil mind" by clear and convincing evidence. Linthicum, 150 Ariz. at 332, 723 P.2d at 681.

**V. Motion to Strike**

The Court may strike "redundant, immaterial, impertinent, or scandolous" material from a pleading. Fed. R. Civ. P. 12(f). However, such motions are disfavored and will ordinarily be denied unless the challenged allegations have no possible logical connection to the substance of the controversy and the moving party will suffer significant prejudice if the motion is denied. See 5C Wright & Miller, Federal Practice & Procedure: Civil §§ 1380-82 (3d ed. 2004). Prejudice is broadly defined as "[d]amage or detriment to one's legal rights or claims." Black's Law Dictionary 1299 (9th ed. 2009).

**DISCUSSION**

Having considered Plaintiff's motion, the Court finds that entry of default judgment is appropriate, and that injunctive relief is warranted. While the Court awards Plaintiff compensatory damages, the Court declines to award punitive damages. Finally, the Court denies Plaintiff's motion to strike.

**I. Default Judgment**

The first Eitel factor militates toward granting Plaintiff default judgment because Plaintiff would be prejudiced by its denial. Notwithstanding multiple continuances, Defendants have not substantively answered Plaintiff's Complaint in accordance with the Rules of Civil Procedure, and further have refused to appear before the Court. (Doc. 57 at 2.) If the Court were to deny default judgment, it is likely Defendants would continue their obstructionist course, thereby precluding Plaintiff from litigating its claims. Plaintiff would be left without "other recourse for recovery." Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 499 (C.D.Cal. 2003).

The second and third factors also militate toward granting Plaintiff default judgment. As discussed below in Part III.A, infra, Plaintiff has suffered damages as a result of Defendants' defamatory communications, and there is no evidence to suggest that these communications are true.

Next, the fifth factor considers the possibility of disputed material facts. Because Defendants have thus far refused to address the substance of Plaintiff's allegations, it is impossible to determine what facts, if any, would be subject to dispute. However, Defendants have not denied making false statements about Plaintiff, thereby allowing the inference that the falsity of the complained of communications is undisputed. Thus, this factor also militates toward granting Plaintiff default judgment.

The sixth Eitel factor weighs heavily in favor of granting default judgment because there is no possibility Defendants' failure to respond was due to excusable neglect. To the contrary, Plaintiff had difficulty serving Defendants in state court, and upon removal to this Court, Defendants adopted a course of conduct seemingly determined to prevent litigation from progressing. Highlights of Defendants' conduct includes: routinely waiting until the deadline, or after, to request extensions to file their Answer; stipulating to acceptance of service only to subsequently move to vacate that stipulation; and explicitly refusing to appear at a hearing considering Plaintiff's Motion for Default Judgment.

Even construing Defendants' filings most liberally, they still have not responded to the substance of Plaintiff's allegations, have not denied making the allegedly defamatory communications at issue, and have not yet alleged facts that, if true, would constitute a defense. Despite actual notice, Defendants have indicated nothing but an unwillingness to participate in the resolution of this action. See, e.g., Benny v. Pipes, 799 F.2d 489 (9th Cir. 1986) (affirming district court's grant of default judgment against defendants that received two extensions of time, yet did not answer plaintiff's complaint ). The Court has no option but to find that Defendants' failure to answer or otherwise defend to be intentional.

Analysis of the remaining two Eitel factors confirms that default judgment should be granted: The fourth factor balances the amount of money at stake in the action against the seriousness of the complained of conduct. Plaintiff seeks $735,425.00 in compensatory damages. (Doc. 47 at 11.) This is a substantial sum, but is not excessive when viewed in light of the seriousness of Defendants' alleged conduct. Thus, the Court finds these competing interests to be in equipoise, and the fourth Eitel factor to be neutral.

Finally, the seventh Eitel factor reflects the Federal Rules' strong preference for adjudication on the merits, putting its thumb on the scale against granting default judgment. In other words, if uncertainty exists as to whether or not to grant default judgment, doubt should be resolved in favor of the defaulting party. No such uncertainty exists in this case; thus, default judgment, though disfavored, is appropriate under these circumstances.

Having determined default judgment is appropriate, the Court accepts as true all factual allegations made in the Complaint. See Garamendi, 683 F.3d at 1080.

**II. Injunctive Relief**

Plaintiff asserts it currently suffers and will continue to suffer from Defendants' defamatory statements. The defamatory communications at issue were posted by Defendants to interactive computer service websites. (Doc. 1-1 at 4-5.) Pursuant to 47 U.S.C. § 230(c)(1), interactive computer services are immunized from any liability arising from content created by third parties. See Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc).

Althought the Court cannot order the service providers to remove the complained of postings, the Court finds that those postings cause an irreparable harm to Plaintiff, and also that Plaintiff's remedies at law are inadequate to compensate them for that harm. As explained below in Part III.A, infra, the Court finds the complained of communications are indeed defamatory; thus, the Court finds that the public's interest would not be injured by ordering Defendants to remove the defamatory communications and enjoining Defendants from making further defamatory communications. Finally, balancing the hardships between the parties, a remedy at equity is warranted. Plaintiff suffers a substantial hardship in not being able to erase these libelous communications. Defendants' hardship of being prevented from uttering defamatory communications regarding Plaintiff is not really a hardship. Therefore, the four-part test is satisfied, and the Court will grant Plaintiff a permanent injunction. See eBay Inc., 547 U.S. at 391.

/ / /

/ / /

## III. Compensatory Damages

### A. Defamation

The Court finds that Plaintiff API is a private figure, and that the communications at issue do not implicate matters of public interest. The Court further finds that Defendants either knew their statements concerning Plaintiff were false, or acted with reckless disregard as to their falsity. Thus, the Court determines that Defendants did defame Plaintiff.

Having considered Plaintiff's filings and testimony regarding damages, the Court finds the amount sought— $735,425.00—unsupported by evidence. Specifically, Plaintiff's calculation presumes an unfaltering monthly growth of 50%, and 100% retention rates. (Doc. 1-1 at 6.) No enterprise enjoys continued growth of that magnitude; it is unsustainable. Regardless, Plaintiff did not prove to a reasonable certainty that their losses even approach the requested sum. See Cnty of La Paz v. Yakima Compost Co., 224 Ariz. 590, 607, 233 P.3d 1169, 1186 (App. 2010).

In the Court's view, a more appropriate figure is $291,029.00. The Court reached this number by averaging Plaintiff's monthly sales for the time period before Defendants began defaming Plaintiff in March 2012; the pre-defamation monthly average is 6,051 (the "baseline"). (See Doc. 54 at 5.) To estimate the volume of lost business, the number of sales Plaintiff actually made were deducted from the monthly baseline, which gave monthly sales losses of 1,720 in March, 5,440 in April, 2,929 in May, and 1,552 in June. The total sum of monthly sales lost during the four-month period from March 2012 to June 2012 is thus 11,641. Lost sales outside of this time frame cannot be calculated with sufficient certainty.

While only 70% of Plaintiff's sales maintain their subscription after the end of a 14-day trial—"conversion" in marketing terminology—Plaintiff called a witness who testified that Plaintiff's average profit of $25.00 per sale takes non-converting customers into account. Thus, the $291,029.00 award of damages for defamation contemplates 11,641 lost sales at $25.00 per sale. Although this amount is less than half of what Plaintiff seeks, it is all that is supported by the evidence.

/ / /

**B. False Light Invasion of Privacy**

As a matter of law, a corporation has no mental or emotional interests to vindicate. Consequently, the Court awards no damages for this claim.

**C. Tortious Interference**

Defamatory statements constitute improper interference. See Antwerp Diamond Exch., 130 Ariz. at 528, 637 P.2d at 740; Restatement (Second) Torts § 767 cmt. b. Because many of the complained of statements refer directly to Plaintiff, it is more likely than not that Defendants intended to disrupt Plaintiff's business relationships. Consequently, the Court finds Defendants purposefully sought to interfere with Plaintiff's current and prospective business interests. See Antwerp Diamond Exch., 130 Ariz. at 528, 637 P.2d at 740.

However, the injury for which Plaintiff seeks compensation is the loss of business due to Defendants' defamatory communications. (Doc. 1-1 at 8.) This is precisely the same injury for which Plaintiff seeks compensation in Count I. (Id. at 7.) While Plaintiff has more than one theory of recovery, they have suffered only one injury, and is entitled to only one verdict. Because the Court has awarded Plaintiff damages on their defamation claim, the Court cannot award damages for the IIBR claim.

**IV. Punitive Damages**

The Court finds Plaintiff failed to carry their clear and convincing burden of proof that Defendants' acted with the requisite "evil mind." See Linthicum, 150 Ariz. at 332, 723 P.2d at 681. In particular, the Court finds that Defendants' conduct, while possibly reckless, did not rise to the level of malicious, aggravated, or outrageous. See Rawlings, 151 Ariz. at 162, 726 P.2d at 578. Consequently, the Court awards no punitive damages.

**V. Motion to Strike**

The Court finds that Defendants' allegations that Plaintiff seeks to strike have not affected Plaintiff's legal rights or claims. To the contrary, Plaintiff is prevailing in this matter, and cannot have been prejudiced. Thus, Plaintiff's Motion to Strike is moot.

/ / /

/ / /

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED granting in part and denying in part** Plaintiff's Motion for Default Judgment. (Doc. 45.)

**IT IS FURTHER ORDERED** that the Clerk shall enter Judgment in favor of Plaintiff and against Defendants in the amount of $291,029.00. The Judgment shall earn interest at the annual federal rate from the date of entry of this Judgment until paid in full.

**IT IS FURTHER ORDERED** that Defendants are permanently enjoined from publishing defamatory statements regarding Plaintiff to any third-party.

**IT IS FURTHER ORDERED** that Defendants shall remove the complained of postings from interactive computer service websites.

**IT IS FURTHER ORDERED** that Defendants shall file with the Court and serve on Plaintiff no later than thirty days from the date of this Order a written report under oath setting forth in detail the manner and form in which they have complied with this injunction.

**IT IS FURTHER ORDERED** that the Court retains jurisdiction over this matter in order to enforce the injunctive relief.

**IT IS FURTHER ORDERED denying as moot** Plaintiff's Motion to Strike. (Doc. 49.)

DATED this 28th day of October, 2013.

Stephen M. McNamee
Senior United States District Judge